IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DIANNE RIDLEY, o/b/o,<br>M. R., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 05-0672 -CV-W-ODS<br>) |
| JO ANNE B. BARNHART<br>Commissioner of Social Security | )<br>)<br>) |
| Defendant. | ) |

<u>ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS</u>

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her application for supplemental security income benefits. The Commissioner's decision is affirmed.

<u>I. BACKGROUND</u>

On May 1, 2003, Dianne Ridley filed an application for Supplemental Security Income benefits on behalf of her son, M.R. ("Plaintiff"). Plaintiff was born April 27, 1993, and alleges he became disabled on October 11, 2000 due to a learning disability.

A diagnostic evaluation was done by the Kansas City School District on April 16, 2001. A Guidance Counselor ("Counselor") observed Plaintiff in a regular classroom setting and noted Plaintiff seemed to put forth an effort when asked questions, but was usually incorrect. R. at 142. He looked directly at the teacher when she was speaking, but did not want others to "bother him." Plaintiff seemed easily distracted, but would raise his hand to answer questions. If another student said the answer aloud, he would repeat the correct response. R. at 142.

Plaintiff has been diagnosed with asthma. R. at 143. The Counselor observed Plaintiff's general health appeared not to be within normal limits. R. at 143. According

to Plaintiff's teacher, his fine/gross motor skills are within age-appropriate expectations. Plaintiff's hearing and vision appeared to be within normal limits. Plaintiff's teacher also noted Plaintiff's academic skills are poor and he has some problems with articulation. During an individual testing process, Plaintiff demonstrated normal levels of attention, cooperation and patience. R. at 143.

The Diagnostic Summary Report reveals that Plaintiff achieved a composite IQ score of 92 (average) on the Stanford-Binet IV intelligence test. R. at 144. The Vineland Adaptive Behavior Scales indicated low Adaptive Level for Plaintiff's age. The intelligence tests indicated the general level of intellectual functioning is within the average range, subtest scores revealed relative weakness in range of factual information, short-term auditory, memory for meaningful material and verbal comprehension. R. at 144.

Achievement tests report grade equivalents at actual grade placement in written language, but below actual grade placement in reading and math. Teacher assessment indicates a severe deficit in reading, math and written expression. R. at 145. Plaintiff's language skills were found to be functional, as compared to peers in the same age group. His speech and language skills are adequate for academic needs, and his articulation skills are moderately disordered. Plaintiff's vocal productions are adequate in pitch, quality and intensity, and his fluency patterns, rate and duration are adequate. R. at 145. Classroom observations and teacher assessment indicated Plaintiff's social relationships within the school setting are generally within age appropriate expectations. Plaintiff's teacher observed that M.R. tries very hard. He wants to please and help others, even if he is having difficulties. Plaintiff is a well behaved student who will sometimes "talk out." R. at 145. According to the social/developmental history, no identifiable sociological variables that may affect learning were noted. The results of the evaluation indicated initial evidence of Learning Disabilities as the primary handicapping condition. R. at 146.

A Teacher Questionnaire was filled out in December 2001 by Plaintiff's classroom teacher, Sheila Larker. R. at 85. Ms. Larker indicated Plaintiff shows lack of concentration and does not possess a long attention span. Plaintiff has a difficult time

keeping up with the pace of the class and does not complete his assignments. R. at 85. Plaintiff does not follow written or verbal instructions. Plaintiff requires constant supervision regarding school work and activities. Plaintiff does not get along with other students and fights often. Plaintiff does not show a great deal of respect for authority. R. at 85. According to Ms. Larker, Plaintiff does not do what is required of him, seldom does what he is told to do, never returns his homework, talks when he should be working and does not believe he has to do the class work. R. at 87.

Plaintiff's Individual Education Plan (IEP) from Graceland Elementary, dated October 7, 2002, indicated he has made excellent progress in speech therapy, but his classroom speech is still unclear and difficult to understand. It was determined that Plaintiff still demonstrated the need for special education services. R. at 158.

A Childhood Disability Evaluation Form was completed by Douglas B. Vaughn, Ph.D. on June 11, 2003. R. at 175. Dr. Vaughn indicated Plaintiff does not have a severe impairment or combination of impairments that meets, equals or functionally equals a listed impairment. Plaintiff's functioning in acquiring and using information is less than marked, he has no limitation in attending and completing tasks, and his interaction and relating to others is less than marked. R. at 177. Plaintiff has no limitation in moving about and manipulating objects, caring for himself, or in his health and physical well-being. R. at 179.

During diagnostic testing done in July 2003, in connection with Plaintiff's IEP, Plaintiff demonstrated normal levels of attention, cooperation and patience. R. At 184. Plaintiff achieved a composite IQ score of 91, within the average range. Testing revealed average intellectual functioning, with strengths in mathematical concepts/computation and ability to analyze word problems. R. at 185. Testing revealed weakness in vocabulary development, verbal expression, concept formation, verbal comprehension, knowledge of the English Syntax, part-to-whole synthesis, visual analysis, visual memory, discrimination of details from nonessential details, planning ability, range of functional information, meaningful long-term memory, sequencing, chunking or clustering strategies, short-term auditory memory, ability to use and relate general life experience, social knowledge, flexibility and pressure. R. at 185. His social,

emotional and behavioral development was within the normal range.

On December 30, 2004, Jamie Prestage, M.S., conducted a consultative evaluation at the request of Plaintiff's Disability Determination Counselor. R. at 259. Plaintiff scored a 73 on the Wechsler Intelligence Scale for Children IV. Ms. Prestage could not give an explanation for the inconsistent result from the average scores achieved on two different earlier testing sessions. Plaintiff's speech was intelligible, but his grammar and vocabulary appeared to be below age level. R. at 259.

A hearing was held in front of Administrative Law Judge William G. Horne on March 22, 2005. The ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability. Plaintiff has a severe impairment, but his learning disability and asthma do not meet or medically equal the severity of any impairment listed in Part A or B of Appendix 1 to Subpart P. The ALJ found Plaintiff has marked limitations in his ability to acquire and use information; less than marked limitations in his ability to attend and complete tasks, and interact and relate with others; and no limitations in his ability to move about and manipulate objects, care for himself, or in health and physical well being. The ALJ found Plaintiff's subjective complaints credible to the extent they are supported by the evidence of record. Finally, the ALJ determined Plaintiff has not been under a disability at any time from his alleged onset date through the date of the decision.

## II. DISCUSSION

A. Standard

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final

decision.  Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)).  Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

The three-step evaluation process for determining disability for children requires the child to show: (1) that he was not working; (2) that he had a severe impairment or combination of impairments; and (3) that his impairment of combination of impairments was of listing-level severity, i.e., the impairment(s) met, medically equaled, or functionally equaled the severity of an impairment in the listings. 20 C.F.R. § 416.924 (2005). If a child's impairment or combination of impairments does not meet or medically equal a listed impairment, SSA will assess all of the functional limitations caused by the child's impairment or combination of impairments. 20 C.F.R. § 416.926a. Functional equivalence considers six broad areas of functioning, called "domains."  To establish functional equivalence, a child must have a medically determinable impairment or combination of impairments that results in marked limitations in two domains or an extreme limitation in one domain. Id.

B. "Attending and Completing" Domain

The ALJ found Plaintiff has a marked limitation in acquiring and using information.  Plaintiff claims the ALJ's finding in the six domain areas, listing only one area as "marked," is not supported by the substantial weight of the evidence. Plaintiff alleges the ALJ should have found he also had a marked limitation in the domain of attending and completing tasks.  Plaintiff's mother and teachers have stated that there are problems with attention and concentration. However, the ALJ found Plaintiff had less than marked limitation in this area, stating that while Plaintiff has been noted to be distracted, he has not been diagnosed or treated for an attention deficit disorder. The ALJ further stated that Plaintiff's lack of attention appears attributable to his lack of comprehension and frustration concerning the subject being studied.  This is supported

5

by testing in 2001 and 2003, during which Plaintiff demonstrated normal levels of attention, cooperation and patience. R. at 143 and 184. Psychologist Prestage also observed that Plaintiff demonstrated good attention and concentration. R. at 260. The ALJ's decision assesses each domain and clearly considers whether the Plaintiff has marked or less than marked limitations and the record as a whole supports the ALJ's determination the Plaintiff has marked limitation in only one domain.

C. Listing 112.05D

Plaintiff argues he satisfies the requirements of Listing 112.05D. However, Plaintiff does not have an IQ of 70 or below as required by Listing 112.05D. Plaintiff achieved a composite IQ score of 92 (average) on the Stanford-Binet IV intelligence test. R. at 144. In July 2003, Plaintiff achieved a composite IQ score of 91. R. At 184. In 2004, Plaintiff scored a 73 on the Wechsler Intelligence Scale for Children IV. R. at 259.

The ALJ found Plaintiff's impairments did not meet or medically equal the severity of any impairment listed in 20 C.F.R. Pt. 404, Subpart P, App. 1. Plaintiff argues the ALJ should have considered whether his impairments were "functionally equivalent" to any listing. However, as stated above, the ALJ's decision assesses each domain and considers whether each of Plaintiff's impairments functionally equal a listed impairment. Further, the Eighth Circuit has rejected the "benefit of the doubt" argument when dealing with an IQ score above 69. Cockerham v. Sullivan, 895 F.2d 492, 496 (8th Cir. 1990).

For a claimant to show his impairment meets a listing, it must meet all of the specified medical criteria. Marciniak v. Shalala, 49 F.3d 1350, 1353 (8th Cir. 1995). Plaintiff has not provided medical evidence showing that his impairments meet or medically equal Listing 112.05D or any other listing.

6

## III. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is affirmed.

IT IS SO ORDERED.

DATE: May 10, 2006

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT